IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-01700-RBJ

CHERRY HILLS FARM COURT, LLC,

    Plaintiff,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY,

    Defendant.

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on defendant First American Title Insurance Company ("First American")'s motion for summary judgment [ECF No. 30] and plaintiff Cherry Hills Farm Court, LLC ("Cherry Hills")'s motion for summary judgment [ECF No. 31]. For the reasons stated herein, First American's motion is GRANTED and Cherry Hill's motion is DENIED.

## I. BACKGROUND

This case arises out of a title insurer's decision not to cover a counterclaim made against an insured by a third party. The insured, Cherry Hills, is a land developer that purchased real property located at 2 Cherry Hills Farm Court, Englewood, Colorado 80113 (the "property"). ECF No. 3 ¶ 8. On June 23, 2015 First American issued title insurance to Cherry Hills regarding this property. ECF No. 30 ¶ 1. The title insurance policy covered loss or damage by ten specified risks, including "[a]ny defect in or lien or encumbrance on the Title." ECF No. 30-1 at FATIC 000620. First American agreed to pay "costs, attorneys' fees, and expenses incurred in

1

defense of any matter insured against by [the] policy, but only to the extent provided in the Conditions." ECF No. 30 ¶ 2. In the Conditions, First American limited coverage to "only those stated causes of action alleging matters insured against by this policy." *Id.* ¶ 3.

After purchasing the land, Cherry Hills discovered that it included an area of disputed property. *Id.* ¶ 6. Neighbors Chris and Michelle Zobolas had erected a fence, a garden, and an irrigation system on this disputed property. *Id.*; ECF No. 31-4 at 3. The Zobolases had installed the last of these improvements in 2006, long before Cherry Hills purchased the property. ECF No. 31 at 10.

On September 8, 2016 Cherry Hills filed a complaint in the Arapahoe County District Court against the Zobolases seeking damages for trespass and a decree quieting title relative to the disputed area of property. ECF No. 30 ¶ 6; ECF No. 31-4 at 3. On October 5, 2016 the Zobolases asserted two counterclaims: (1) for adverse possession, quiet title, and declaratory relief, and alternatively (2) for monetary set-off for improvements. ECF No. 30 ¶ 8.

Cherry Hills tendered the claim and made demand upon First American to pay indemnity and defense costs on April 21, 2017. *Id.* ¶ 12. On May 8, 2017 First American notified Cherry Hills that it accepted coverage for the adverse possession counterclaim under a reservation of rights. *Id.* ¶ 13. It retained Kirk Holleyman, Esq., to defend Cherry Hills in the first counterclaim. *Id*. However, First American denied coverage for the monetary set-off counterclaim because it was "not an alleged title defect." ECF No. 31 ¶ 5.

The trial between Cherry Hills and the Zobolases took place in July of 2017. ECF No. 30 ¶ 14. On August 18, 2017 the state court awarded Cherry Hills $305,079 for its trespass claim and found against the Zobolases on both counterclaims. *Id*.

On June 12, 2018, believing that First American was wrong to deny coverage on the Zobolas' set-off counterclaim, Cherry Hills filed a complaint against First American in the Arapahoe County District Court. ECF No. 3. The complaint asserts three claims: (1) declaratory judgment that First American had a duty to defend the set-off counterclaim, (2) breach of contract, and (3) insurance bad faith. *Id.* ¶¶ 16–30. It seeks damages for "annoyance, inconvenience, loss of use of funds, attorney fees, [and] costs and expenses relating to the [Zobolas litigation]." *Id.* ¶ 24.

First American removed the case to federal court on July 5, 2018, pursuant to 28 U.S.C. §§ 1332 and 1441. ECF No. 1. It then filed a motion for summary judgment on March 19, 2019 seeking to dismiss all of Cherry Hills' claims. ECF No. 30 at 1. First American argues that (1) it did not breach its duty to defend Cherry Hills in the Zobolas litigation and (2) where there is no breach of contract, there is no basis for a bad faith claim. *Id.* at 6, 12. In response, Cherry Hills filed a cross motion for summary judgment. ECF No. 31.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

#### A. Breach of Contract

Cherry Hills asserts that First American's failure to defend the Zobolas' set-off counterclaim constitutes a breach of contract. ECF No. 31 ¶ 8. It argues (1) that the title insurance policy by its terms covers the Zobolas' set-off counterclaim, and (2) that even if not, First American is obligated to cover the set-off counterclaim under the "complete defense" rule. I address each argument in turn.

##### 1. Policy Coverage by its Terms

Cherry Hills argues that the title insurance policy by its terms covers the Zobolas' set-off counterclaim. ECF No. 31. Under Colorado law, "[a] title insurance company's obligations depend on the terms of the insurance policy, and the interpretation of those terms is based upon principles of contract law." *First Citizens Bank & Trust Co. v. Stewart Title Guaranty Co.*, 320 P.3d 406, 410 (Colo. App. 2014). The interpretation of an insurance contract is a matter of law for the court to decide. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

In interpreting the terms of an insurance policy, courts "must enforce the plain language of the policy unless it is ambiguous." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). "An insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* If a policy is ambiguous, "it is construed against the drafter of the document and in favor of the insured." *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994). In

4

general, Colorado courts broadly construe insurance policies in favor of the insured. *See TCD, Inc. v. Am. Fam. Mut. Ins. Co.*, 296 P.3d 255, 257–58 (Colo. App. 2012) (noting that Colorado courts "construe coverage provisions in an insurance contract liberally in favor of the insured to provide the broadest possible coverage").

Here, Risk 2 of the policy covers loss or damage by "[a]ny defect in or lien or encumbrance on the Title." ECF No. 30-1 at FATIC 000620. The policy defines this risk as "[a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land," including "encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land." ECF No. 30-1 at FATIC 000620.

The parties appear to disagree over application of the phrase "affecting the Title," although neither party asserts that the phrase is ambiguous. The parties do not dispute that the set-off counterclaim constitutes a claim for damages for an "encroachment[] onto the Land of existing improvements located on adjoining land" as required by the policy. ECF No. 31 at 10. The Zobolas' set-off counterclaim sought monetary set-off for the cost of their encroaching improvements, i.e., the fence, garden, and irrigation system. ECF No. 30 ¶ 8. Nor do the parties dispute that the last of these improvements was installed in 2006, before Cherry Hills purchased the property in 2015, and that the improvements "would [have been] disclosed by an accurate and complete land survey of the Land" as required by the policy. *Id*.

However, First American argues that the Zobolas' set-off counterclaim does not "affect[] the Title" as required under the policy. ECF No. 34 at 4. I agree. By its plain meaning, affecting the title implies affecting interest in the property itself. The set-off counterclaim is not

5

an adverse title claim and does not seek interest in the property. *Id*. There was no dispute over ownership or possession—it was solely a claim to recover the value of the Zobolas' admittedly trespassory improvements. It is linked to the title only in that the improvements were located on the property. But this is no greater a link than, for example, a tort that occurred on the property. A claim does not affect title merely because it involves the property. Regardless of how the state court resolved the set-off counterclaim, Cherry Hills' title to the property would remain unaffected. Rather, the set-off counterclaim is akin to an unjust enrichment claim. It would be more aptly covered by general liability insurance, not title insurance.

Cherry Hills attempts to reframe the set-off counterclaim as a continuing trespass. It argues that because the Zobolas' adverse possession counterclaim required the state court to decide whether the improvements constituted a continuing trespass, and because a continuing trespass "affect[s] the Title," a counterclaim for the value of that continuing trespass must affect the title. ECF No. 35 at 4–5. This is both incorrect and misleading. A continuing trespass is a tort that gives rise to its own cause of action. *See Hoery v. United States,* 64 P.3d 214, 217–18 (Colo. 2003). A continuing trespass does not in and of itself affect title. It affects title only if it somehow alters interests in the land. More importantly, the set-off counterclaim was not a continuing trespass claim—it was a set-off claim. It did not seek to determine whether there had been a continuing trespass or how to remedy a continuing trespass. Rather, the tortfeasor asserted the set-off counterclaim to recover the value of the admittedly trespassory improvements. Cherry Hills cannot reframe a set-off counterclaim as a continuing trespass merely because there is a continuing trespass involved. Nor does the set-off counterclaim affect title merely because there was a related adverse possession counterclaim.

This plain meaning interpretation is supported by Colorado Supreme Court precedent interpreting this phrase in other contexts. The Colorado Supreme Court has defined "actions affecting real property" in the context of the Colorado venue statute, *see* C.R.C.P. 98(a) ("All actions affecting real property, franchises, or utilities shall be tried in the county in which the subject of the action, or a substantial part thereof, is situated."). Under that statute, "[t]o 'affect' is as broad a term as '[to determine] a right or interest in.'" *Jameson v. Dist. Court,* 172 P.2d 449, 449–50 (Colo. 1946) (alteration in original); *see also Sanctuary House, Inc. v. Krause*, 177 P.3d 1256, 1257 (Colo. 2008) (finding that an action did not "affect" real property where the plaintiff claimed breach of a contract to convey certain real estate, because there was no dispute over ownership of the real estate and, even if there were, such dispute would be only ancillary to the underlying breach of contract question).

The Colorado Supreme Court has also defined actions "affecting the title to real property" in the context of the Colorado lis pendens statute, Colo. Rev. Stat. Ann. § 38-35-110 (West). Under this statute, "even litigation that does not seek to change ownership in any way but does 'involve a determination of certain rights [and liabilities] incident to ownership'" can "affect" title. *Kerns v. Kerns*, 53 P.3d 1157, 1164 (Colo. 2002) (quoting *Hammersley v. District Court, Colo.*, 610 P.2d 94, 96 (Colo. 1980) (en banc)). This language includes, for example, suits involving the extent of a property owner's rights to build on his property, *see Hammersley*, 610 P.2d at 95–96 (finding that a suit to enjoin construction until the construction plans comport with protective covenants affected the real property within the meaning of the lis pendens statute); suits seeking to set aside a conveyance of real property as fraudulent, *see Crown Life Ins. Co. v. April Corp.,* 855 P.2d 12, 14–15 (Colo. App. 1992); suits seeking to impose constructive trusts on real property, *see Kerns*, 53 P.3d at 1165; and suits litigating a promise to

7

grant a deed of trust applying to a specific parcel of real property, *see Cooper v. Flagstaff Realty,* 634 P.2d 1013, 1015 (Colo. App. 1981).

The Colorado Supreme Court's interpretation of "affecting" title or real property in the context of venue and lis pendens affirms that the plain meaning of "affecting the Title" here unambiguously excludes the Zobolas' set-off counterclaim here. The set-off counterclaim did not seek to determine any right or interest in the property. It did not seek to enjoin the use or possession of the property. It did not involve a determination of any rights or liabilities incident to ownership, such as limitations on Cherry Hill's ability to use the property, the propriety of the conveyance of the property, or the imposition of a constructive trust on the property. Rather, the set-off counterclaim acknowledged that the Zobolases had no right or interest in the property and sought, in fairness, the value of their improvements to the property.

I find that the terms of Cherry Hill's title insurance policy unambiguously excludes coverage for the Zobolas' set-off counterclaim.

2. The Complete Defense Rule

Cherry Hills also argues that even if the policy does not cover the Zobolas' set-off counterclaim, First American is nevertheless obliged to cover it under the complete defense rule. In Colorado, the complete defense rule (also known as the "in for one, in for all" rule) holds that "[i]f the complaint alleges even one claim that is arguably covered by the policy, the insurer must defend its insured against all claims presented in the complaint." *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007). There are two rationales for this rule: It is difficult to prorate the cost of defense between covered and noncovered claims, and it is not feasible to separate representation for covered and noncovered claims. *See* 1 Allan D. Windt, *Insurance Claims and Disputes* § 4:13 (5th ed. 2010).

However, Colorado courts have only ever stated the complete defense rule in the context of general liability insurance claims. *See Sachs v. American Family Mut. Ins. Co.*, 251 P.3d 543, 547 (Colo. App. 2010); *Carl's Italian Restaurant v. Truck Ins. Exchange*, 183 P.3d 636, 639 (Colo. App. 2007); *Bainbridge, Inc. v. Travelers Cas. Co. of Connecticut*, 159 P.3d 748, 756 (Colo. App. 2006); *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 36 (Colo. App. 2004); *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998); *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1997); *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997). No Colorado court has applied the complete defense rule in the context of title insurance, which differs from general liability insurance in significant ways.

General liability insurance protects against future risks—it is "written for a specific hazard in order to enable the underwriter to calculate premiums on some equitable as well as predictable basis." *Northern Ins. Co. of New York v. Ekstrom*, 784 P.2d 320, 324 (Colo. 1989) (internal quotations omitted) (quoting 7A J. Appleman, *Insurance Law and Practice* § 4500.04 (W. Berdal ed. 1979). Coverage is determined based on the effective policy period, and a new premium is paid for each policy period. *See Village Homes of Colorado, Inc. v. Travelers Cas. and Sur. Co.,* 148 P.3d 293, 297 (Colo. App. 2006).

In contrast, "[t]itle insurance is merely a contract to indemnify the insured for any losses incurred as a result of later found defects in title." *First Federal Sav. and Loan Ass'n of Fargo, N.D. v. Transamerica Title Ins. Co.*, 19 F.3d 528, 530 (10th Cir. 1994). It protects the purchaser "against defects in or encumbrances on title which are in existence at the time the insured takes title," rather than against future risks. *Firstland Village Associates v. Lawyer's Title Ins. Co.*, 284 S.E.2nd 582, 583 (S.C. 1981). Purchasers of title insurance generally make a single

premium payment in return for indefinite coverage. *See GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 985 N.E.2d 823, 829 (Mass. 2013). Significantly, "title insurance policies typically state their defense obligation in terms of defending particular *causes of action*, whereas general liability insurers often state their defense obligations more broadly, in terms of 'suits' or 'actions.'" *GMAC Mort.*, 985 N.E.2d at 829 n.8. As one court has summarized, title insurance differs because "(1) the risk covered is limited, specific, and retrospective, (2) the premium is a relatively modest one-time charge, and (3) the duration of coverage is indefinite." *Lupu v. Loan City, LLC*, 903 F.3d 382, 394 (3d Cir. 2018) (citing *GMAC Mort.*, 985 N.E.2d at 828–29).

Most states to have considered the issue of whether to apply the complete defense rule to title insurance have declined. In *GMAC Mortgage, LLC v. First American Title Insurance Co.*, the Massachusetts Supreme Judicial Court concluded that title insurance is so "fundamentally different" from general liability insurance as to preclude application of the complete defense rule. *See id.* at 829. It reasoned that "the central policy behind [the complete defense rule]—that parsing multiple claims is not feasible—is not implicated to the same extent in the title insurance context as in the general liability insurance context." *GMAC Mort.*, 985 N.E.2d 823, 829 (Mass. 2013); *see also Deutsche Bank Nat'l Ass'n v. First American Title Ins. Co*., 991 N.E.2d 638, 642 (Mass. 2013) (reiterating that the complete defense rule does not apply to title insurance based on its "unique purpose").

The Seventh Circuit Court of Appeals also predicted that the Illinois Supreme Court would agree with *GMAC Mortgage* and reject the complete defense rule in the context of title insurance. *See Phila. Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 399 (7th Cir. 2014). In *Philadelphia Indemnity Insurance Co. v. Chicago Title Insurance Co.*, it emphasized the "unique nature of title insurance" and the differing language of title insurance policies. *Id*.

10

Because an insurer's duty to defend is contractual, a general liability insurance policy which promises to defend "a suit" or "any suit" obliges the insurer to defend the *entire* suit. *Id*. ("The complete-defense rule reflects and enforces the broad defense promise in standard general liability policies and makes sense given the comprehensive coverage provided by this kind of insurance."). In contrast, the court noted, "[t]itle insurance is much narrower" and the contract's language is "specifically limited to claims that are covered by the policy." *Id.*

Similarly, in *Lupu v. Loan City, LLC*, the Third Circuit Court of Appeals predicted that the Pennsylvania Supreme Court would agree with the *GMAC Mortgage* and *Philadelphia* decisions. *See* 903 F.3d at 394. The Third Circuit's analysis is particularly relevant to the instant case. The Third Circuit acknowledged the general rule that "a title insurance policy is subject to the same rules of construction that govern other insurance policies." *Id.* at 395 (internal quotations omitted) (quoting *Lupu v. Loan City, LLC*, 244 F. Supp. 3d 455, 465 (E.D. Pa. 2017), *aff'd in part, rev'd in part and remanded,* 903 F.3d 382 (3d Cir. 2018)). It then rejected the argument that this general rule compelled it to apply the complete defense rule to title insurance. *Id*. It held that "the lack of state-law authority creating an exception to the [complete defense] rule does not compel us to define its scope by that general statement." *Id*. Rather, despite the lack of state-law authority, "the reasoning applied in out-of-state cases is sufficient 'persuasive data' to convince us of the direction [the Pennsylvania Supreme Court] would go." *Id*.

The Third Circuit also emphasized that reaching the opposite conclusion would give the insured a "windfall." *Id*. It reasoned that "title policies are unambiguous that the parties bargained for partial coverage," and that such policy language is industry-standard from the

11

American Land Title Association. *Id.* (noting that the American Land Title Association revised the policy form in 1987, changing coverage from "litigation" to "cause of action").

I find myself in the same scenario as did the Third Circuit in *Lupu*: balancing the general rule that title insurance and general liability insurance are bound by the same rules of construction, against the "fundamental difference" between the two in this particular context. Indeed, Colorado has codified that general rule in C.R.S. § 10-11-119, which provides that "the laws governing insurance companies . . . shall apply to the business of title insurance and to title insurance companies." C.R.S. § 10-11-119.

However, like the *Lupu* court, I predict that the Colorado Supreme Court would agree with the reasoning of these out-of-state cases for two reasons. First, Colorado law requires insurance policies—both title insurance and general liability insurance—to be interpreted according to their plain meaning. *See Hoang*, 149 P.3d at 801. Here, the title insurance policy expressly limits coverage to "only those stated *causes of action* alleging matters insured against by this policy." ECF No. 30 ¶ 3 (emphasis added). This is in contrast to general liability insurance policies which provide coverage for "a suit" or "any suit." *See Phila. Indem. Ins. Co.*, 771 F.3d at 399. As discussed, the plain meaning of this title insurance policy unambiguously excludes the set-off claim. *See supra* section A.1. Thus, as the Third Circuit noted in *Lupu*, requiring First American to nevertheless cover the set-off counterclaim would provide Cherry Hills with a "windfall." *See* 903 F.3d at 395.

Second, the scope and purpose of title insurance is so different from general liability insurance that the complete defense rule is not necessary. The complete defense rule is premised on the idea that it is not feasible to bifurcate multiple claims in a single suit. *See* 1 Allan D. Windt, *Insurance Claims and Disputes* § 4:13 (5th ed. 2010). Yet as the Massachusetts Supreme

Judicial Court noted in *GMAC Mortgage*, "because title issues are discrete, they can be bifurcated fairly easily from related claims." 985 N.E.2d at 829.

Cherry Hills' own experience underscores this point. First American apparently easily bifurcated the Zobolas litigation by providing representation for the adverse possession counterclaim and not the set-off counterclaim. Indeed, Cherry Hills definitively won the Zobolas litigation: The state court awarded it $305,079 in damages for its trespass claim and found against the Zobolases on both of their counterclaims. ECF No. 30 ¶ 14. Cherry Hills does not now seek damages for losing the set-off counterclaim; it seeks damages for providing its own representation for the set-off counterclaim. Yet nowhere does Cherry Hills allege, or provide facts indicating, that either its self-provided representation of the set-off claim or Holleyman's representation of the adverse possession counterclaim were injured by the bifurcation.[1]

It is worth noting that at least two district courts—one in the Eastern District of Texas and one in the Northern District of Ohio—have reached the opposite conclusion that I reach here regarding application of the complete defense rule to title insurance. *See Lawyers Title Ins. Corp. v. Graham Mortg. Corp.*, No. 4:09-CV-262, 2010 WL 2635074, at *5 (E.D. Tex. Apr. 16, 2010), *report and recommendation adopted,* No. 4:09CV262, 2010 WL 2635089 (E.D. Tex. June 28, 2010); *Little Italy Dev., LLC v. Chicago Title Ins. Co.*, No. 1:11 CV 112, 2011 WL 2532663, at *3 (N.D. Ohio June 24, 2011), *vacated on request of the parties,* No. 1:11-CV-00112, 2012 WL 7807916 (N.D. Ohio June 15, 2012). However, both decisions are unpublished and I find neither persuasive.

---

[1] In its motion for summary judgment Cherry Hills makes the conclusory statement that First American's "failure to timely or meaningfully defend the first counterclaim constitute[s] a breach of contract and insurance bad faith." ECF No. 31 ¶ 8. Yet Cherry Hills never again mentions the quality of Holleyman's representation of the adverse possession counterclaim. Cherry Hills certainly never alleges that the bifurcation itself was the cause of the "failure to . . . meaningfully defend" the adverse possession counterclaim.

The Eastern District of Texas court merely stated the complete defense rule without any analysis, including any explanation of its applicability in the context of title insurance. *See Lawyers Title Ins. Corp.*, 2010 WL 2635074, at *5.

The Northern District of Ohio court concluded that the complete defense rule applies to title insurance because it is a rule of public policy rather than of contract interpretation. *See Little Italy Dev., LLC v*, 2011 WL 2532663, at *5 (finding that the complete defense rule is a "duty to defend implied in law"). As such, the parties could not contract around the rule by including language in the insurance policy rejecting the complete defense rule. I disagree that the parties to a title insurance contract cannot contract around the complete defense rule. I instead agree with the Seventh Circuit's reasoning that because an insurer's duty to defend is contractual, and because of the "unique nature of title insurance," the parties to a title insurance contract can include language precluding application of the complete defense rule. *See Phila. Indem. Ins. Co.*, 771 F.3d at 399. I also note that the Northern District of Ohio court did not consider the differences between title insurance and general liability insurance; the question at issue was limited to whether the complete defense rule is contractual in nature. *See Little Italy Dev., LLC v*, 2011 WL 2532663, at *3.

In light of the plain language of title insurance policies, the limited purpose and scope of title insurance, and the resultant relative ease with which they can be bifurcated from related claims, it makes little sense to require title insurers to defend against noncovered claims just because they are asserted parallel to covered claims. Accordingly, First American's motion for summary judgment on Cherry Hills' breach of contract claim is granted, Cherry Hills' motion for summary judgment on its breach of contract claim is denied, and the breach of contract claim is dismissed.

B. **Insurance Bad Faith**

Cherry Hills claims that First American breached the implied duty of good faith and fair dealing. ECF No. 3 ¶¶ 25–36. "Every contract contains an implied duty of good faith and fair dealing." *Wheeler v. Reese,* 835 P.2d 572, 578 (Colo. App. 1992). Cherry Hills argues that "First American's attempt to stretch the meaning of the Policy to preclude coverage for CHFC constitutes continuing bad faith." ECF No. 31 at 13.

Because First American did not have a duty under the policy to defend Cherry Hills against the Zobolas' set-off counterclaim, there can be no bad faith claim. *See Miller v. Hartford Cas. Ins. Co.,* 160 P.3d 408, 412 (Colo. App. 2007) (noting that where duty to defend and indemnify is resolved in insurer's favor, bad faith is subject to summary judgment); *Farmers Alliance Mut. Ins. Co. v. Cutrone,* 448 F. Supp. 2d 1226, 1234 (D. Colo. 2006) (same).

Accordingly, First American's motion for summary judgment on Cherry Hills' bad faith claim is granted, Cherry Hills' motion for summary judgment on its bad faith claim is denied, and the bad faith claim is dismissed.

## ORDER

Defendant's motion for summary judgment, ECF No. 30, is GRANTED. Plaintiff's motion for summary judgment, ECF No. 31, is DENIED. The Court enters summary judgment dismissing all of plaintiff's claims.

DATED this 6th day of December, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge